UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    -v.-

MOUT'Z SOUDANI,
  a/k/a "Marty,"
  a/k/a "Martin,"
  a/k/a "Senior,"

                Defendant.

24 Cr. 555 (CS)

---

## THE GOVERNMENT'S OPPOSITION TO
## THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

 

JAY CLAYTON
United States Attorney
Southern District of New York
50 Main Street, Suite 1100
White Plains, New York 10606

Jared Hoffman
Justin Horton
Olga I. Zverovich
Assistant United States Attorneys
    *Of Counsel*

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................................................ 1
   I. The Bribery and Honest Services Fraud Scheme ..................................................... 2
   II. The Interstate Threats ................................................................................................. 4
ARGUMENT .................................................................................................................................... 5
   I. Applicable Law ............................................................................................................... 5
      A. Pleading Standards ................................................................................................. 5
      B. Bribery and Honest Services Wire Fraud............................................................ 7
      C. Interstate Threats ..................................................................................................... 8
   II. The Motion to Dismiss the Bribery and Honest Services Counts Should Be Denied ........... 9
      A. The Indictment Properly Alleges a *Quid Pro Quo* Agreement......................................... 9
         1. The Alleged *Quid Pro Quo* Agreement is Sufficiently Specific ................................. 10
         2. The Alleged *Quid Pro Quo* Agreement is Sufficiently Contemporaneous ................. 11
         3. The Indictment Need Not Provide "Necessary Evidence" ........................................... 12
   III. The Motion to Dismiss the Interstate Threats Count Should Be Denied............................ 14
CONCLUSION................................................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Costello v. United States*,
　350 U.S. 359 (1956) .................................................................................................. 9

*Elonis v. United States*,
　575 U.S. 723 (2015) .............................................................................................. 8, 14

*Hamling v. United States*,
　418 U.S. 87 (1974) ................................................................................................. 6, 9

*Skilling v. United States*,
　561 U.S. 358 (2010) ..................................................................................................... 8

*Snyder v. United States*,
　603 U.S. 1 (2024) ................................................................................................. 7, 12

*United States v. Adams*,
　760 F. Supp. 3d 6 (S.D.N.Y. 2024) ................................................. 7, 8, 10, 11, 13

*United States v. Avenatti*
　2020 WL 70951 (S.D.N.Y. Jan. 6, 2020) ............................................................. 16

*United States v. Benjamin*,
　95 F.4th 60 (2d Cir. 2024) ............................................................. 6, 8, 10, 12, 13

*United States v. Blagojevich*,
　794 F.3d 729 (7th Cir. 2015) ............................................................................... 10

*United States v. Bout,*
　2011 WL 2693720 (S.D.N.Y. July 11, 2011) .................................................... 15

*United States v. Bout,*
　731 F.3d 233 (2d Cir. 2013) ................................................................................. 15

*United States v. Dawkins*,
　999 F.3d 767 (2d Cir. 2021) ................................................................................... 9

*United States v. De La Pava*,
　268 F.3d 157 (2d Cir. 2001) ................................................................................... 6

*United States v. Elie,*
　2012 WL 383403 (S.D.N.Y. Feb. 7, 2012) .................................................... 6, 12

*United States v. Elson*,
　968 F. Supp. 900 (S.D.N.Y. 1997) ....................................................................... 6

*United States v. Francis*,
　164 F.3d 120 (2d Cir. 1999) ........................................................................ 14, 16

*United States v. Frias*,
　521 F.3d 229 (2d Cir. 2008) ................................................................................ 14

*United States v. Friedman*,
   854 F.2d 535 (2d Cir. 1988) ............................................................................................... 10

*United States v. Gelzer*,
   50 F.3d 1133 (2d Cir. 1995) ............................................................................................... 15

*United States v. Goldberg*,
   756 F.2d 949 (2d Cir. 1985) ........................................................................................... 6, 13

*United States v. Inzunza*,
   638 F.3d 1006 (9th Cir. 2011) ............................................................................................ 10

*United States v. Lemke,*
   2021 WL 3195470 (S.D.N.Y. July 28, 2021) ....................................................................... 9

*United States v. Macrina,*
   109 F.4th 1341 (11th Cir. 2024) ......................................................................................... 12

*United States v. Menendez,*
   2025 WL 2166135 (S.D.N.Y. July 31, 2025) ..................................................................... 13

*United States v. Murgio,*
   209 F. Supp. 3d 698 (S.D.N.Y. 2016) ................................................................................. 15

*United States v. Myers*,
   692 F.2d 823 (2d Cir. 1982) ............................................................................................... 10

*United States v. Ng Lap Seng*,
   934 F.3d 110 (2d Cir. 2019) ................................................................................................. 7

*United States v. Resendiz-Ponce*,
   549 U.S. 102 (2007) ............................................................................................................. 6

*United States v. Stringer*,
   730 F.3d 120 (2d Cir. 2013) ................................................................................................. 6

**Statutes**

18 U.S.C. § 2 ........................................................................................................................ 2, 3, 4, 8
18 U.S.C. § 201 ............................................................................................................................. 13
18 U.S.C. § 371 ........................................................................................................................... 2, 7
18 U.S.C. § 666 ....................................................................................................... 2, 7, 8, 12, 13
18 U.S.C. § 875 ................................................................................................................. 8, 14, 15
Fed. R. Crim. P. 7 ............................................................................................................... 5, 14, 15
Fed. R. Crim. P. 29 ......................................................................................................................... 6
Fed. R. Crim. P. 12 ....................................................................................................................... 13

**PRELIMINARY STATEMENT**

The Government respectfully submits this opposition to defendant Mout'z Soudani's motion (Dkt. 41 ("Mot.")) to dismiss the Indictment (Dkt. 1 ("Ind.")). The motion should be denied. As further discussed below, the defendant seeks to avoid facing trial on charges of bribery, honest services fraud, and making threats, by claiming that the Indictment fails to meet an evidentiary bar that does not exist and asking the Court to accept his own proffered facts in place of the well-pleaded allegations. The Indictment's bribery and honest services fraud counts describe a *quid pro quo* in which the defendant agreed to pay a prosecutor to investigate and charge his estranged relatives—and then followed through with tens of thousands of dollars in bribes. The Indictment's interstate threats count describes the language and alleged intent of the messages that the defendant sent across the country to brag about his corrupt influence and threaten physical harm to his victims. The defendant's arguments about alternative inferences and additional facts do not come close to meriting dismissal of the Indictment; their appropriate forum is the jury trial that must come next in this case.

**BACKGROUND**

The charges in the Indictment arise out of a corrupt agreement between the defendant and his co-conspirator and former co-defendant, Stewart Rosenwasser, who was at the time a senior prosecutor in the Orange County District Attorney's Office.[1] The defendant agreed to pay Rosenwasser money in exchange for Rosenwasser opening a criminal investigation and prosecuting two related cases against estranged members of the defendant's family. And the corrupt agreement was executed: at the defendant's request, Rosenwasser investigated and prosecuted the defendant's estranged family members, and in exchange the defendant gave

---

[1] Every factual statement in this brief should be treated as an allegation.

1

Rosenwasser tens of thousands of dollars through checks and money orders purporting to be loans. The defendant's payments began at the outset of the criminal investigation and ran through its conclusion, and were often made in proximity to pivotal moments like its initiation, the filing of a felony complaint, and the return of grand jury indictments. Along the way, the conspirators' words and deeds—including the defendant's promise to make the prosecutor he was paying "more than happy," and money paid at milestones in the prosecutor's promised criminal investigations—underscored the existence and execution of their corrupt agreement. That corrupt agreement and its execution are the foundation for charges against the defendant for committing, and conspiring to commit, bribery, in violation of 18 U.S.C. §§ 371, 666, and 2 (Counts One and Three, the "bribery counts") and honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, 1349, and 2 (Counts Four and Five, the "honest services counts"). And because the defendant sent vivid and specific threats from New York to, among others, family members in Colorado, the defendant is also charged with making interstate threats, in violation of 18 U.S.C. §§ 875(c) and 2 (Count Eight, the "threats count").

I.  The Bribery and Honest Services Fraud Scheme

In the middle of October 2022, the defendant told a friend that his estranged sister ("Individual-1") and her son ("Individual-2," and together, the "Individuals") had stolen money from him that he intended to get back. (Ind. ¶ 14).[2] The defendant told his friend that Rosenwasser—who was at all relevant times the Executive Assistant District Attorney and Chief

---

[2] The defendant contends that only certain paragraphs of the Indictment support the bribery counts (Mot. 2), but the bribery counts—like all five counts against the defendant—expressly incorporate all the allegations in the Indictment except for those setting forth the statutory elements of the charged offenses. (Ind. ¶¶ 62, 67; see also id. ¶¶ 69, 71, 74, 80).

2

Counsel to the Orange County District Attorney—already owed the defendant close to $40,000, and that the prosecutor "would 'take care of' [the defendant]'s situation." (*Id.*).

About ten days later, the defendant and Rosenwasser spoke on the first of a series of phone calls. (Ind. ¶ 15). Two days later, Rosenwasser contacted a law-enforcement investigator about a "Potential Case" into the Individuals, (*id.*), and on or about October 31, 2022—the end of that same month—the defendant's sought-after criminal investigation into the Individuals (the "Criminal Case") was formally opened "based on ROSENWASSER's request." (*Id.*).

The conspirators' communications about the Criminal Case began right away. The defendant gave Rosenwasser instructions—for example, "please make sure when they get them [the Individuals] both have apple computer and telephone that will show you where they ever been specially him," (Ind. ¶ 16)—and Rosenwasser shared confidential investigative information with the defendant—for example, about investigative personnel, and Rosenwasser's intention "to issue grand jury subpoenas next week," (*id.*).

The defendant's first apparent related payment to Rosenwasser came shortly after the prosecutor caused the formal opening of the Criminal Case: on November 10, 2022, the same day that Rosenwasser and the defendant planned to meet alone at a diner, Rosenwasser deposited a check for $15,000 from the defendant. (Ind. ¶ 18(b)). Approximately one week after he made that $15,000 payment, the defendant demanded to know whether Rosenwasser would be "able to freeze the [Individuals'] accounts"—a request that Rosenwasser answered affirmatively and followed with a promise of his own "maximum effort" and commitment to "utilize all available assets." (Ind. ¶ 18(c)).

Over the next several months, the defendant and Rosenwasser continued this sequence of sharing instructions and information and exchanging payment for progress in the Criminal Case.

3

A few of the many examples alleged in the detailed, 43-page Indictment illustrate the point. After Rosenwasser told the defendant on February 9, 2023, that he was "almost ready to go to grand jury," the defendant followed up with a $5,000 check dated four days later. (Ind. ¶ 23). Less than a month later, on March 8, 2023, Rosenwasser charged both of the Individuals by complaint—and then traveled personally to the scene of their arrests and related searches in Colorado, promising the defendant he would "come by this weekend for [a] full report" upon his return. (*See id.* ¶¶ 26–29). The defendant used $10,000 in cash to buy money orders at two different post offices on May 9 and 11, 2023—bookending the May 10 and 12 dates that Rosenwasser was presenting the Criminal Case to the grand jury with the defendant's own testimony. (*Id.* ¶¶ 44–45; *see also id.* ¶ 45 (Rosenwasser deposited half of the money orders that same month and signed over the other half to a law firm)). Later, in January 2024, the defendant paid Rosenwasser another $15,000 by check three days after receiving more than $475,000 in restitution awarded because of the Criminal Case that Rosenwasser initiated as part of his corrupt agreement with the defendant. (*Id.* ¶ 55).

## II. The Interstate Threats

As he was instructing and rewarding Rosenwasser, the defendant issued a series of written threats directed at the Individuals and sent electronically to (among other recipients) the defendant's child, who was also in Colorado. (*See id.* ¶ 30). The first of these threatening messages was sent on March 8, 2023—the same day that Rosenwasser charged the Individuals by complaint. (*See id.* ¶¶ 26, 30). The messages showed off the defendant's improper access to internal investigative information (*see id.* ¶ 30 ("I saw 3 body cameras of the apartment")), bragged about the defendant's ability to bring charges against others (*see id.*), and wielded as a weapon the corrupt bargain he had made with Rosenwasser (*see, e.g., id.* ¶ 34 ("[T]his case is very unique . . . Usually the police make the arrest and bring the charges and the prosecutor would follow through with the charges. This case is different, the DA [Rosenwasser] started the investigation, and will

4

make the charges and will prosecute the case . . . Nothing will happen unless he wants it to happen."]).  The messages culminated in one that the defendant sent on April 16, 2023, two days after making a $5,000 payment to Rosenwasser, in which the defendant, referring to Individual-1, wrote—among several other explicit threats—"I wanna fucking choke you with my own hands you deserve a fucking beating like you never had before."  (Ind. ¶ 38).

## ARGUMENT

The defendant's attacks on the charges against him run the gamut from arguments that the Indictment does not adequately allege the date of the corrupt agreement to evidentiary assertions about alternative facts that are neither alleged in the Indictment nor a legally valid basis to challenge its sufficiency.[3]  The Indictment more than adequately alleges that the defendant agreed to and paid bribes in exchange for the prosecution of his personal adversaries, and that he threatened to harm at least one of those adversaries in messages sent over state lines.  The counts against the defendant are well pleaded and the motion should be denied.

I. Applicable Law

  A.  Pleading Standards

Federal Rule of Criminal Procedure 7 provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient if it "'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418

---

[3] The Government does not concede the accuracy of any of the defendant's factual allegations outside of the Indictment.

U.S. 87, 117 (1974)); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).[4] To state an offense, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). "An indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001).

"The dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *De La Pava*, 268 F.3d at 165. Where a motion to dismiss the indictment is, at core, a challenge to the sufficiency or quality of the evidence the Government may adduce at trial to establish the defendant's guilt of the crimes charged, a defendant must wait until after the close of the Government's case-in-chief at trial or after the jury's verdict before contesting the sufficiency of the evidence. *See* Fed. R. Crim. P. 29; *see also, e.g.*, *United States v. Elie*, No. 10 Cr. 336 (LAK), 2012 WL 383403, at *1 (S.D.N.Y. Feb. 7, 2012) ("[T]here is no summary judgment in criminal cases. . . . [A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence."); *United States v. Elson*, 968 F. Supp. 900, 905 (S.D.N.Y. 1997) ("[A]t this stage in the proceedings, such a challenge to the sufficiency of the evidence does not provide a basis for dismissal of the Indictment or for holding a pre-trial hearing, because the Government is not required to demonstrate the sufficiency of its proof until the close of its case-in-chief at trial."). In reviewing a motion to dismiss, courts "accept as true all of the allegations of the indictment," and

---

[4] Unless otherwise noted, case quotations omit all internal citations, quotation marks, and previous alterations.

6

"[c]ontrary assertions of fact by the defendants will not be considered." *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985); *United States v. Benjamin*, 95 F.4th 60, 66 (2d Cir. 2024) (same).

### B. Bribery and Honest Services Wire Fraud

Count Three charges the defendant with bribing Rosenwasser, in violation of 18 U.S.C. § 666(a)(2). That statute reaches anyone who "corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of," among other things, a state or local government agency, "in connection with any business, transaction, or series of transactions" of that agency. 18 U.S.C. § 666(a)(2); *see generally United States v. Ng Lap Seng*, 934 F.3d 110, 122–36 (2d Cir. 2019).[5] Count One charges the defendant under 18 U.S.C. § 371 with conspiring with Rosenwasser to violate Section 666's bribe-giving prohibition and the same statute's parallel bribe-taking prohibition. *See* 18 U.S.C. § 666(a)(1) (barring "an agent" of any state or local agency from "corruptly solicit[ing] or demand[ing]," or "accept[ing] or agree[ing] to accept," bribes).

Section 666 criminalizes bribes, not gratuities. *See generally Snyder v. United States*, 603 U.S. 1 (2024). Bribes and gratuities both describe a payment to a public official in return for the official's actions. *Id.* at 5–6. But whereas bribes are paid or agreed to before an official does what the bribe-payer is paying the official to do, gratuities are paid after the fact, without any advance agreement to be influenced on the part of the official. *See id.* Where the payment is made after the act, the distinction is whether the official takes "(i) a reward given after the act with no agreement beforehand (gratuity) or (ii) a reward given after the act pursuant to an agreement beforehand (bribe)." *Id.* at 18.

---

[5] Section 666 also contains certain limitations not at issue in the defendant's motion, such as a monetary threshold for federal funds received by the state or local government. *See* 18 U.S.C. § 666.

To charge a violation of Section 666, the Government must allege "a *quid pro quo* agreement." *United States v. Adams*, 760 F. Supp. 3d 6, 15 (S.D.N.Y. 2024) (citing *Snyder*). "In *quid pro quo* bribery schemes, the *quid* is a thing of value that a defendant agrees to accept, the *quo* is an act that the defendant agrees to perform in exchange for the *quid*, and the *pro* is the link between the two: an agreement by the defendant to accept the *quid* in exchange for being influenced to perform the *quo*." *Id.* (emphasis in original). While a "*quid pro quo* must be clear and unambiguous," the "showing of a *quid pro quo*" agreement "may be based on inference and need not involve an express statement." *Benjamin*, 95 F.4th at 71.

Counts Four and Five charge the defendant with committing, and conspiring with Rosenwasser to commit, the crime of using the wires in a scheme to deprive the public of its intangible right to Rosenwasser's honest services as a county prosecutor, in violation of 18 U.S.C. §§ 1343, 1346, and 1349 (often referred to collectively as the honest services statute). "[T]he honest-services statute covers only bribery and kickback schemes," *Skilling v. United States*, 561 U.S. 358, 368 (2010), and, like Section 666 bribery, requires an alleged *quid pro quo*, *see Benjamin*, 95 F.4th at 67–68.[6]

**C. Interstate Threats**

Count Eight charges the defendant under a statute providing criminal penalties for "whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c). To commit this crime, the defendant must transmit an interstate communication "for the purpose of issuing a threat, or with the knowledge that the communication will be viewed as a threat." *Elonis v. United States*, 575 U.S. 723, 740 (2015). "A Section 875(c) indictment must therefore include an

---

[6] The defendant's arguments do not implicate any other features of the honest services statute.

8

allegation as to the Defendant's subjective intent or contain sufficient factual information for the subject intent to be inferred." *United States v. Lemke*, No. 21 Cr. 100 (AKH), 2021 WL 3195470, at *2 (S.D.N.Y. July 28, 2021) (applying *Elonis* to deny motion to dismiss indictment).

## II. The Motion to Dismiss the Bribery and Honest Services Counts Should Be Denied

Each of the bribery and honest services counts "contains the elements of the offense charged and fairly informs [the] defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. These counts indisputably "track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Alfonso*, 143 F.3d at 776. That is all this Court needs to determine in order to deny the motion. *See Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits."); *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021) ("'At the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial.'" (quoting *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021))).

The defendant's arguments miss their mark as challenges to the sufficiency of the indictment, because they demand different or more detailed pleading than the law requires or they engage in anticipated evidentiary disputes that must be left for a jury trial.

### A. The Indictment Properly Alleges a *Quid Pro Quo* Agreement

The defendant argues variously that the Indictment does not allege a *quid pro quo* agreement with sufficient specificity, sufficient contemporaneity, or sufficient evidence. But the Indictment alleges that the defendant agreed to (and did) pay Rosenwasser "*in exchange for*, among other things, ROSENWASSER investigating and prosecuting the Individuals, providing confidential information about the investigation, and seizing money that was then paid to

9

SOUDANI as restitution." (Ind. ¶ 70 (Count Three) (emphasis added); *see also id.* ¶¶ 64, 65, 73, 75 (similar "in exchange for" allegations in the other bribery and honest services fraud counts)). Because "this 'in exchange for' language is sufficient to allege a *quid pro quo* agreement," *Adams*, 760 F. Supp. 3d at 25, the defendant's various arguments all fail.

### 1. The Alleged *Quid Pro Quo* Agreement is Sufficiently Specific

The motion to dismiss faults the Indictment for purportedly being insufficiently specific about details of the alleged corrupt agreement, arguing that it does "not allege when the agreement was initial [*sic*] entered into between [the defendant] and Rosenwasser," (Mot. 11), and does "not specify when and how such an agreement was made," (*id.* at 14). But an indictment need not allege all the facts that will prove its allegations. *See Benjamin*, 95 F.4th at 73–74. And indeed, the kind of information allegedly missing from the Indictment—about the exact date or form of a corrupt agreement—need not be proven at all, since "evidence of a corrupt agreement in bribery cases is usually circumstantial, because bribes are seldom accompanied by written contracts, receipts or public declarations of intentions." *United States v. Friedman*, 854 F.2d 535, 553 (2d Cir. 1988). Courts thus routinely reject a defendant's claim that "a bribery agreement would become legal if he simply avoided memorializing it expressly in words or in writing." *Benjamin*, 95 F.4th at 75; *see, e.g.*, *United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) ("Few politicians say, on or off the record, 'I will exchange official act X for payment Y.'"); *United States v. Inzunza*, 638 F.3d 1006, 1014 (9th Cir. 2011) ("An official may be convicted without evidence equivalent to a statement such as: 'Thank you for the $10,000 campaign contribution. In return for it, I promise to introduce your bill tomorrow.'"); *United States v. Myers*, 692 F.2d 823, 844 (2d

10

Cir. 1982) (undercover agents offering a bribe need not say, "Congressman, I have here a cash bribe to be exchanged for your corrupt promise to be influenced in your official action.").[7]

### 2. The Alleged *Quid Pro Quo* Agreement is Sufficiently Contemporaneous

The defendant argues that the Indictment "does not adequately allege that any payments made to Rosenwasser were contemporaneously made in connection with a *quid pro quo* agreement between Soudani and Rosenwasser." (Mot. 13). While no authority is cited for the standard that is purportedly not met, the law makes clear that it is sufficient for the Indictment to allege that the defendant "agreed to pay and paid" Rosenwasser "in exchange for" Rosenwasser "investigating and prosecuting the Individuals, providing confidential information about the investigation, and seizing money that was then paid to [the defendant] as restitution." *See Adams*, 760 F. Supp. 3d at 25. The Indictment does more than that, too. It alleges the formation and execution of the agreement in the defendant's and his co-conspirator's own words. (*See, e.g.*, Ind. ¶¶ 18(e), 21 (defendant wrote Rosenwasser during pre-charging investigation that "I give my word at the end you will be extremely more than happy," and Rosenwasser wrote defendant that "I will always protect you. And help you"); *id.* ¶ 29(c) (Rosenwasser reported back to the defendant from the scene of the Individuals' arrests and promised to "come by this weekend" for a "full report")). And it alleges examples of the defendant's formation and execution of the agreement through his and his co-conspirator's deeds. (*See, e.g.*, *id.* ¶ 23 (defendant's $5,000 check was deposited by Rosenwasser four days after telling the defendant "I'm almost ready to go to grand jury"); *id.* ¶¶

---

[7] The only argument that the defendant marshals in support of his motion to dismiss the honest services counts is a repetition of this "when and how" attack on the Indictment's allegations of a *quid pro quo* agreement. (*See* Mot. 15 ("As previously indicated, the government does not specify when and how such an agreement was made, instead, the government relies only on conjecture and innuendo to allege that such an agreement existed.")). This argument fails for the honest services counts for the same reason it fails for the bribery counts.

11

44–46 (defendant bought $10,000 in money orders the days before and after Rosenwasser's grand jury presentation, and the money orders were cashed by Rosenwasser shortly thereafter)). There is no legally consequential ambiguity from these allegations, which demonstrate the "clarity of [the agreement's] terms" to the defendant and his co-conspirator by "infer[ence] from their words and actions." *Benjamin*, 95 F.4th at 74.

And to the extent the defendant argues that the Indictment must allege a perfect symmetry between the agreement and its related bribe payments, he is wrong. (*See* Mot. 13–14 ("In fact, the timeline proffered by the government in the Indictment indicates that the first loan payment [the defendant] made to Rosenwasser was on November 10, 2022, nearly two weeks after Rosenwasser commenced" the Criminal Case)). Section 666 prohibits not only payments given "with intent to influence" a public official but also those taken "with intent to . . . reward" one. 18 U.S.C. § 666(a)(2). In holding that the latter category still meant bribes, not gratuities, *Snyder* reasoned that by including "reward" in the statute, "Congress made clear that the timing of the agreement is the key, not the timing of the payment, and thereby precluded such a potential defense." *Snyder*, 603 U.S. at 18–19; *see also, e.g.*, *United States v. Macrina*, 109 F.4th 1341, 1351 (11th Cir. 2024) (rejecting argument that payments made after the corrupt act must be gratuities under *Snyder*).

**3. The Indictment Need Not Provide "Necessary Evidence"**

The rest of the defendant's attack on the Indictment's bribery counts amounts to criticizing the factual basis for the Government's allegations. But it is at trial, not in the indictment, that the Government needs to show "the necessary evidence" to support its charges. (Mot. 12). Because "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence," *Elie*, 2012 WL 383403, at *1, and "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime," *Alfonso*, 143 F.3d at 776, the Court need not linger on

12

the defendant's argument that "the government has failed to allege sufficient facts beyond blanket conclusory statements that show that any of the payments made by [the defendant] to Rosenwasser, which the government maintains were bribes, were made as part of an agreement for an exchange for any kind of 'official acts.'" (Mot. 11).[8]  Indeed, on the next page of his brief, the defendant concedes that "[t]he indictment . . . alleges that Rosenwasser, in his capacity as a high-ranking prosecutor . . . was induced by the loan payments he received from [the defendant] to prosecute" the defendant's estranged relatives. (Mot. 12.)  That ends the matter.  Nor need the Court consider the defendant's extensive forays into arguments about alternative explanations for the Indictment's allegations. (*See, e.g.*, Mot. 12–13 (arguing, among other things, that "any influence" that the defendant exerted on Rosenwasser "was the result of longstanding friendship between the two men," that the alleged crimes amount only to "at best, a conflict of interest," and that payments from the defendant to Rosenwasser were "not unusual")).  These "contrary assertions of fact by the defendant[] will not be considered" under a proper application of Rule 12. *Goldberg*, 756 F.2d at 950; *Benjamin*, 95 F.4th at 66 (same).

---

[8] It is unclear whether the defendant argues that the Indictment is infirm for failing to allege that Rosenwasser's *quos* were "official acts."  On one hand, the defendant's brief describes at length some of the legal background for certain bribery statutes' "official act" requirements. (*See, e.g.*, Mot. 8–9).  On the other hand, the defendant never makes this argument expressly.  And he also appears to concede (as he must) that the alleged *quos*—including, for example, "that Rosenwasser, in his capacity as a high-ranking prosecutor . . . was induced by the loan payments he received from [the defendant] to prosecute" the defendant's estranged relatives (Mot. 12)—are all official acts under any understanding of that term. (*See also, e.g.*, Mot. 1 ("The official action allegedly procured (the *quo*) was Rosenwasser investigating and criminally prosecuting Individual 1 and Individual 2 . . . .")).  While the defendant is wrong to suggest that *Snyder* abrogated the Second Circuit's holding in *Ng Lap Seng* that Section 666's "more expansive" bribery prohibition does not include Section 201's "official act" requirement, *see, e.g.*, *Adams*, 760 F. Supp. 3d at 16–17, 19–20, the Indictment nonetheless alleges *quos* that satisfy any definition of "official act."  *See United States v. Menendez*, No. 23 Cr. 490 (SHS), 2025 WL 2166135, at *9 (S.D.N.Y. July 31, 2025) ("The decision of whether to investigate and prosecute is both a 'formal exercise of governmental power' and was then clearly 'pending' before the prosecuting or investigating office." (quoting *McDonnell v. United States*, 579 U.S. 550, 574 (2016))).

**III. The Motion to Dismiss the Interstate Threats Count Should Be Denied**

The interstate threats statute provides, in relevant part, that "[w]hoever transmits in interstate or foreign commerce any communication containing . . . any threat to injure the person of another, shall be" guilty of a crime. 18 U.S.C. § 875(c). Count Eight of the Indictment tracks the language of Section 875(c) and describes the time, place, and circumstances of the offense:

> On or about April 16, 2023, in the Southern District of New York and elsewhere, MOUT'Z SOUDANI, a/k/a "Marty," a/k/a "Martin," a/k/a "Senior," the defendant, transmitted in interstate and foreign commerce a communication containing a threat to injure the person of another, to wit, SOUDANI sent Soudani Threats-4 by interstate text message, threatening Individual-1 by stating, among other things: "swear to God I wanna fucking choke you with my own hands you deserve a fucking beating like you never had before . . . . the more you fuck with me, the more I will destroy your son completely I fucking hate you. . . . Motherfucker, I swear to you I'm a going to get you and him one way, or another it's a promise."

(Ind. ¶ 81; *see also id.* ¶ 38). Nothing more is required to state an offense. *United States v. Frias*, 521 F.3d 229, 235–36 (2d Cir. 2008); *see* Fed. R. Crim. P. 7(c)(1).

The defendant makes no argument (nor could he) that the Indictment fails to satisfy Rule 7. Instead, the defendant proffers his own factual allegations, none of which is in the Indictment, about his "advanced age and failing physical health" at the time the alleged threatening text messages were sent. (Mot. 16–17). Based on his own factual allegations drawn from outside of the Indictment, the defendant asks the Court to conclude that, as a matter of law, "no recipients of these alleged text messages could have reasonably viewed [them] as a serious threat to injure them, especially since the recipients in this case, Individual 1 and Individual 2, were related to of [sic] Soudani and were aware of his failing health." (*Id.*); *see United States v. Francis*, 164 F.3d 120, 123 (2d Cir. 1999) (to prove a violation of Section 875(c), the government must show "that the

14

circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury").[9]

This argument is patently meritless. A motion to dismiss an indictment is decided on the face of the charging instrument, and *its* allegations must be accepted as true—not a defendant's. *See, e.g.*, *United States v. Murgio*, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) ("In evaluating a motion to dismiss, the Court 'accept[s] as true all of the allegations of the indictment.'" (quoting *Goldberg*, 756 F.2d at 950)). The defendant may seek to offer other facts at trial or argue to the jury that the elements of the offense were not satisfied, but he is not entitled to dismissal of a properly returned indictment because he disagrees with its allegations or believes the Government will not be able to meet its burden of proof at trial. *See, e.g.*, *United States v. Bout*, No. 08 Cr. 365 (SAS), 2011 WL 2693720, at *5 n.73 (S.D.N.Y. July 11, 2011) ("To the extent [that the defendant's] challenges are to the sufficiency of the Government's evidence to *satisfy*—as opposed to the sufficiency of the Indictment to *allege*—the federal elements of the crimes charged, those arguments are not appropriately decided on a motion to dismiss." (emphases in original)), *aff'd*, 731 F.3d 233 (2d Cir. 2013).

Nor is there any merit to the defendant's argument that, to be legally sufficient, the Indictment needed to allege that "the recipients of Soudani's alleged April 16, 2023, text messages were unaware of Soudani's failing health." (Mot. 16). Nowhere in Rule 7, or any other authority, is there any requirement that an indictment charging Section 875(c) contain any allegations about threat recipients' awareness, or lack thereof, of the sender's health conditions. *See generally*

---

[9] As noted above, in addition to this objective element described in *Francis*, the Supreme Court has articulated a subjective element: a defendant must also have transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis*, 575 U.S. at 740. The defendant does not raise any argument relating to the subjective element in his motion to dismiss. (*See* Mot. 16–17).

*United States v. Gelzer*, 50 F.3d 1133, 1138 (2d Cir. 1995) ("Where . . . the indictment closely tracks the language of the statute, a criminal defendant is sufficiently apprised of the charges to allow preparation of a defense.").

At bottom, "the question of whether a reasonable person would interpret the [defendant's] communication as a true threat" is "a question for the jury at trial." *Francis*, 164 F.3d at 123 n.4. The defendant's attempt to litigate before trial evidence that may or may not be offered (let alone admitted) with respect to issues the jury will ultimately decide is improper and must be rejected. Because Count Eight tracks the language of the statute, apprises the defendant of the nature of the accusations against him, and provides notice generally of where and when the crime occurred, it is "legally sufficient." *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2020 WL 70951, at *4 (S.D.N.Y. Jan. 6, 2020).

## CONCLUSION

For the reasons set forth above, the motion to dismiss the Indictment should be denied.

Dated: White Plains, New York
August 18, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:     /s/
Jared Hoffman
Justin Horton
Olga I. Zverovich
Assistant United States Attorneys
(212) 637-1060 / 2276 / 2514

16